UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

ANGEL MARTIS GARAY,       )
                                  )
      Plaintiff,         )
                                  )
      v.            )   Case No. 3:16-cv-30122-KAR
                                  )
NANCY A. BERRYHILL,        )
Acting Commissioner of Social     )
     Security Administration,     )
                                  )
      Defendant.      )


MEMORANDUM AND ORDER REGARDING PLAINTIFF'S MOTION
REQUESTING REMAND BASED ON NEW AND MATERIAL EVIDENCE, PLAINTIFF'S
MOTION FOR ORDER REVERSING THE COMMISSIONER'S DECISION, AND THE
DEFENDANT'S MOTION TO AFFIRM THE COMMISSIONER'S DECISION
(Dkt. Nos. 20, 22 & 27)
September 25, 2017

ROBERTSON, U.S.M.J.

    I.     Introduction

    On June 30, 2016, plaintiff Angel L. Martis Garay ("Plaintiff") filed a complaint pursuant

to 42 U.S.C. § 405(g) ("§ 405(g)") against the Acting Commissioner of the Social Security

Administration ("Commissioner"), appealing the denial of his claims for Supplemental Security

Income ("SSI") and Social Security Disability Insurance ("SSDI"). Plaintiff asserts that the

Commissioner's decision denying him such benefits – memorialized in a March 2, 2016 decision

by an administrative law judge ("ALJ") – is in error. Specifically, Plaintiff alleges that the ALJ

erred by: (1) failing to find that his impairment met Listing 1.04 in 20 C.F.R. Part 404, Subpart

P, App. 1; (2) ignoring objective evidence corroborating his claims of disabling pain; and (3)

relying, at step five, on flawed testimony from the vocational expert. By a separate motion, also

addressed in this Memorandum and Order, Plaintiff seeks remand of this case pursuant to

sentence six of § 405(g) for presentation of new and material evidence. By his motions, Plaintiff

seeks remand for consideration of new evidence, or, in the alternative, judgment on the pleadings

that the Commissioner's decision be reversed or remanded for error based on consideration of

the existing evidence (Dkt. Nos. 20, 22). The Commissioner has moved for an order affirming

the decision of the Commissioner (Dkt. No. 27). The parties have consented to this court's

jurisdiction (Dkt. No. 14). *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73. For the following

reasons, the court DENIES Plaintiff's motions and GRANTS the Commissioner's motion.

II.     Procedural Background

Plaintiff applied for SSI and SSDI on May 10, 2012, alleging a January 1, 2012 onset of

disability (Administrative Record ("A.R.") at 195-211). Plaintiff's applications were denied

initially and on reconsideration (*id*. at 121-24, 128-131, 133-38). Plaintiff requested a hearing

before an ALJ, and one was held on January 22, 2013, at which time Plaintiff claimed disability

due to hepatitis C, back pain, and anxiety and depression (*id*. at 44, 49-50, 53, 55). Following

the hearing, the ALJ issued a decision on March 28, 2013, finding that Plaintiff was not disabled

and denying Plaintiff's claims (*id*. at 8-29). The Appeals Council denied review on May 30,

2014, and the ALJ's decision became the final decision of the Commissioner (*id*. at 1-7).

Plaintiff appealed the denial to the United States District Court for the District of Massachusetts,

which reversed the ALJ's decision and remanded the case in order for the ALJ to properly

consider the side effects, if any, of Plaintiff's medications. *See Garay v. Colvin*, Civil Action

No. 14-30138-MGM, 2015 WL 1648748, at *4 (D. Mass. April 14, 2015). A second hearing

was held on October 16, 2015 (A.R. at 610-42). Following the hearing, the same ALJ again

found that Plaintiff was not disabled and denied his claims (*id.*at 585-609). Plaintiff did not

request review by the Appeals Council, and has exhausted his administrative remedies.  This suit followed.

III.    <u>Legal Standards</u>

A.  <u>Standard for Entitlement to Social Security Disability Insurance</u>

In order to qualify for SSI and SSDI, a claimant must demonstrate that he is disabled within the meaning of the Social Security Act.[1]  A claimant is disabled for purposes of SSI and SSDI if he "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A); 42 U.S.C. § 423(d)(1)(A).  A claimant is unable to engage in any substantial gainful activity when he "is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work."  42 U.S.C. § 1382c(a)(3)(B); 42 U.S.C. § 423(d)(2)(A).

The Commissioner evaluates a claimant's impairment under a five-step sequential evaluation process set forth in the regulations promulgated under each statute.  *See* 20 C.F.R. § 416.920; 20 C.F.R. § 404.1520.  The hearing officer must determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant suffers from a severe impairment; (3) whether the impairment meets or equals a listed impairment contained in Appendix 1 to the regulations; (4) whether the impairment prevents the claimant from

---

[1] For SSDI, the claimant also must demonstrate that the disability commenced prior to the expiration of his insured status for disability insurance benefits.  *See* 42 U.S.C. § 423(a)(1).

performing previous relevant work; and (5) whether the impairment prevents the claimant from doing any work considering the claimant's age, education, and work experience. *See id*. *See also Goodermote v. Sec'y of Health & Human Servs*., 690 F.2d 5, 6-7 (1st Cir. 1982) (describing the five-step process). If the hearing officer determines at any step of the evaluation that the claimant is or is not disabled, the analysis does not continue to the next step. 20 C.F.R. § 416.920; 20 C.F.R. § 404.1520.

Before proceeding to steps four and five, the Commissioner must make an assessment of the claimant's "residual functional capacity" ("RFC"), which the Commissioner uses at step four to determine whether the claimant can do past relevant work and at step five to determine if the claimant can adjust to other work. *See id*. "RFC is what an individual can still do despite his or her limitations. RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *2 (July 2, 1996).

The claimant has the burden of proof through step four of the analysis, *Goodermote*, 690 F.2d at 7, including the burden to demonstrate RFC. *Flaherty v. Astrue*, 2013 WL 4784419, at *9 (D. Mass. Sept. 5, 2013) (citing *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004)). At step five, the Commissioner has the burden of showing the existence of other jobs in the national economy that the claimant can nonetheless perform. *Goodermote,* 690 F.2d at 7.

B. Standard of Review

The District Court may enter a judgment affirming, modifying, or reversing the final decision of the Commissioner, with or without remanding for rehearing. *See* 42 U.S.C. §

1383(c)(3); 42 U.S.C. § 405(g).  Judicial review "is limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." *Ward v. Comm'r of Soc. Sec.*, 211 F.3d 652, 655 (1st Cir. 2000).  The court reviews questions of law *de novo*, but must defer to the ALJ's findings of fact if they are supported by substantial evidence. *Id*. (citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir.1999)).  Substantial evidence exists "'if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the] conclusion.'" *Irlanda Ortiz v. Sec'y of Health & Human Servs.*, 955 F.2d 765, 769 (1st Cir. 1991) (quoting *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981)).  In applying the substantial evidence standard, the court must be mindful that it is the province of the ALJ, and not the courts, to determine issues of credibility, resolve conflicts in the evidence, and draw conclusions from such evidence.  *Id*.  So long as the substantial evidence standard is met, the ALJ's factual findings are conclusive even if the record "arguably could support a different conclusion."  *Id*. at 770.  That said, the Commissioner may not ignore evidence, misapply the law, or judge matters entrusted to experts.  *Nguyen*, 172 F.3d at 35.

IV.    Discussion

A.   The Evidence

Plaintiff was 43 when the second hearing was held (A.R. at 43).  He had been incarcerated for approximately 15 years in Puerto Rico (*id.* at 42).  His prior relevant employment was as a janitor and a home health aide.

1.   Relevant Medical Records[2]

_____

[2] Although Plaintiff's benefits applications were based on claimed limitations resulting from mental health impairments as well as claimed limitations caused by physical impairments, his arguments appealing the denial of benefits are only related to his physical impairments and related functional limitations.  Accordingly, the summary of evidence is limited to medical records relevant to the issues raised by Plaintiff in this appeal.

On April 9, 2012, Plaintiff was seen at the Mercy Emergency Room after taking medication that belonged to a friend and had been prescribed for muscle aches. Plaintiff was described as a 40-year-old male with no significant medical history who was physically active, worked out daily, and was a roofer by trade (*id.* at 300). His musculoskeletal examination was normal (*id.* at 301). On or around May 5, 2012, Plaintiff was transported to the Mercy Medical Center Emergency Room after he was assaulted. The diagnosis was facial contusions and fractures and a subdural hematoma. Diagnostic imaging of Plaintiff's cervical spine conducted during this emergency room visit showed mild degeneration throughout his cervical spine (*id.* at 291, 299). A May 24, 2012 image of Plaintiff's lumbosacral spine showed spondylolisthesis at L6-S1[3] and degenerative disc disease at this level (*id.* at 341).

On July 19, 2012, Plaintiff was seen by David Chadbourne, M.D., of Comprehensive Family Medical Care. Notes from the visit reflect that Plaintiff presented as a well-developed healthy appearing male in no apparent distress. Plaintiff had back pain but no joint stiffness or limb pain (*id.* at 377-78).

On January 8, 2013, Plaintiff was seen at Mercy Medical Center Emergency Room following a motor vehicle accident. He complained of lower back and right elbow pain and reported having chronic back pain which was disabling (*id.* at 393). On examination, Plaintiff had full range of motion in all joints, was able to ambulate in the emergency room without difficulty, and had mild lumbar region tenderness. The diagnosis was acute lumbar strain.

---

[3] Spondylolisthesis is the "forward displacement of a lumbar vertebrae on the one below it and esp. of the fifth lumbar vertebra on the sacrum producing pain by compression of nerve roots." Merriam Webster's Medical Dictionary 711 (2006).

Plaintiff was prescribed pain medication and directed to care for himself at home and avoid strenuous activity (*id.* at 395).

On January 18, 2013, Plaintiff was evaluated by Raghu Bajwa, M.D., of Physical Medicine and Rehabilitation, as a result of the car accident. Plaintiff presented with neck pain, shoulder pain bilaterally, with more pain in his right than his left shoulder, lower back pain, and pain in his right elbow (*id.* at 530). On examination, Dr. Bajwa observed moderate limitation in the range of motion in Plaintiff's cervical spine and tenderness to palpitation (*id.* at 531). He found mild limitation in the range of motion in Plaintiff's left shoulder, moderate limitation in the range of motion in the right shoulder, and limited range of motion in Plaintiff's right elbow (*id.* at 532). While Dr. Bajwa judged that Plaintiff's range of motion in his thoracic spine was within normal limits, he observed moderate limitations in the range of motion in Plaintiff's lumbar spine. A straight leg raising test was negative bilaterally. Dr. Bajwa's initial diagnosis was cervical muscle and ligament injuries, bilateral shoulder contusions, with the right shoulder more involved than the left, a right elbow contusion, lumbar muscle and ligament injuries, and a history of chronic neck, lower back, and bilateral shoulder pain which had been aggravated by the motor vehicle accident (*id.* at 533). Dr. Bajwa recommended physical therapy, including a home-based exercise program, and advised Plaintiff to avoid bending, pushing, or heavy lifting or other strenuous activity (*id.* at 534). He opined that Plaintiff was temporarily partially disabled from January 18 through February 18, 2013, as Plaintiff was experiencing impairment of his activities of daily living (*id.*). Plaintiff returned for a follow-up appointment on February 11, 2013, when Dr. Bajwa observed general improvement in Plaintiff's condition. Plaintiff had a mild range of motion limitation in his lumbar and cervical spine. He had a mild limitation in the range of motion in his right shoulder, while the range of motion in his left shoulder was within

normal limits (*id.* at 536-37).  Dr. Bajwa certified that Plaintiff was partially disabled from February 11 through March 11, 2013 (*id.* at 537).  Plaintiff was advised to continue with his home exercise program and physical therapy and was given a prescription for Motrin (*id.*).

Plaintiff received physical therapy at Quality Medical & Physical Therapy from January 11 through March 4, 2013 (*id.* at 540-551).  On discharge, Plaintiff was back to baseline, with intermittent pain in his neck, back and shoulders ranging from 3 to 5 on a ten point scale, and no pain in his elbow.  His range of motion and overall strength were improved (*id.* at 544).

In May 2013, Plaintiff was seen at Caring Health Center to establish a primary care provider (*id.* at 501).  He reported chronic pain in his thoracic and lumbar spine (*id.* at 503).  On examination, he had a normal range of motion (*id.* at 504).  He was referred for an MRI, which was conducted on May 22, 2013 (*id.* at 440).  The MRI revealed L5-S1 spondylolisthesis with bilateral L5 spondylolysis,[4] marked right and moderate left neuroforaminal stenosis at L5-S1 with probable impingement of the right L5 nerve root, and multilevel degenerative disc change, with the most severe damage being at L5-S1 (*id.* at 440-43).

Plaintiff was referred for a consultation with neurosurgeon Thomas S. Kaye, M.D., who reviewed the MRI and examined Plaintiff on September 30, 2013.  Dr. Kaye's examination showed a marked restrictive range of motion to the back and a positive straight leg raising sign on the right side.  Plaintiff had a mild antalgic gait favoring the right side.  Strength and sensation were intact, and there was no atrophy.  The plan was for conservative management, including physical therapy, pain medication, and possible epidural steroid management (*id.* at 480-81).  In November, 2013, Plaintiff saw Nataliya Lukin, a physician's assistant at Caring

---

[4] Spondylolysis is the "disintegration or dissolution of a vertebra."  <u>Merriam Webster's Medical Dictionary</u> 711 (2006).

Health Center. Ms. Lukin noted chronic back pain that was aggravated by twisting and bending. There was no accompanying numbness, leg pain, tingling, or weakness. Anti-inflammatories provided moderate relief (*id.* at 568). Ms. Lukin observed a normal range of motion (*id.* at 569). Plaintiff's physical therapy records from November and December 2013 show that his presentation was consistent with the MRI (*id.* at 563). He reported a forty percent (40%) improvement from the treatment, and the physical therapist observed some improvement with mobility (*id.* at 553, 559, 563).

A January 9, 2014 electrodiagnostic study conducted by Pioneer Spine and Sports Physicians, P.C., was normal, showing no evidence of a right tibial or peroneal mononeuropathy, peripheral neuropathy, muscle myopathy or L2-S1 radiculopathy or lumbar plexopathy. Plaintiff was noted to be in no acute distress. His gait was antalgic, balanced with a normal cadence. He was taking Gabapentin for pain (*id.* at 825-26).

Records from Plaintiff's physical therapy with Pioneer Sports and Sports Physicians from February through April 2014 show treatment for lumbar disc degeneration and spondylosis without myelopathy, and spinal stenosis in the lumbar region. Plaintiff reported pain at 5/10 at the worst and 3/10 at the best (*id.* at 829). On April 7, 2014, Plaintiff appeared robust, with no apparent distress. He stood comfortably erect and walked with a normal gait and station. A straight leg raise was negative bilaterally (*id.* at 835-36). Plaintiff reported that physical therapy had been helpful. He declined a facet or epidural injection (*id.* at 836). At a follow-up physician's visit on April 17, 2014, Plaintiff reported that his back pain was 8/10 at its worst and that Gabapentin was effective for his right leg cramping (*id.* at 838). On April 30, 2014, when Plaintiff reported to resume physical therapy after a fall, he reported to a physical therapist that limitations with bending continued, and that standing more than twenty minutes and sitting more

than ten seconds increased his pain. He walked with a slow and stiff gait (*id.* at 841). By May 8, 2014, Plaintiff reported feeling good from his last physical therapy session. He was attending work meetings and workouts at the YMCA (*id.* at 848).

On May 22, 2014, Plaintiff was seen at the Caring Health Center for a dislocated left shoulder. Records from the Caring Health Center dating from August 2014 through May 1, 2015 consistently mention Plaintiff's reports of chronic lumbar back pain (*id.* at 945, 951, 954, 956), and, beginning on October 23, 2014, shoulder pain, bilateral – except in May 2015, when Plaintiff reported pain only in his left shoulder – without numbness or tingling (*id.* at 951, 954, 956). An x-ray of Plaintiff's shoulders taken on October 23, 2014 showed right a.c. joint arthrosis with no acute abnormality seen, and mild arthrosis of the superior aspect of the left a.c. joint (*id.* at 858-59).

From October 20 through November 24, 2014, Plaintiff was seen at Rehab Resolutions, Inc. for frequent physical therapy sessions. The diagnosis was spondylolisthesis, lumbosacral spondylosis without myelopathy, and degeneration of the lumbar or lumbrosacral discs (*id.* at 872). He was discharged due to lack of improvement (*id.* at 886). These records do not mention shoulder pain.

A May 21, 2015 MRI of Plaintiff's lumbar spine showed nonspecific straightening of the lumbar spine. In contrast to the MRI conducted on May 22, 2013, there was no spondylolisthesis or spondylolysis. Vertebral body heights were well-maintained. The May 2015 MRI showed that at L5-S1, there was some disc desiccation consistent with disc degenerative changes, but there was no nerve root compression or thecal sac encroachment, and no significant spondylosis,

facet arthrosis, or canal or neural foraminal stenosis. Findings at other levels of Plaintiff's lumbar spine were generally consistent (*id.* at 959).

2. <u>Medical Opinion Evidence</u>

On May 24, 2012, Martin Hernandez-Bem, M.D., of Comprehensive Family Medical Care, P.C. completed an EAEDC Medical Report in support of a benefits application by Plaintiff (*id.* at 324, 333). Dr. Hernandez-Bem checked on the form that there was an impairment to Plaintiff's musculoskeletal system and that Plaintiff complained of back pain (*id.* at 327). He noted that, on examination, there was back pain "& ROM LS [illegible]" (*id.* at 328). He checked boxes on the form indicating that plaintiff's condition was chronic and no improvement was expected (*id.*), and that Plaintiff had a physical, mental health, or cognitive impairment affecting his ability to work that was expected to last more than a year (*id.* at 333).

On June 2, 2012, Robin McFee, D.O., a Disability Determination Services ("DDS") physician, offered an opinion, based on a record review, of Plaintiff's physical limitations resulting from his identified impairment of spine disorders (degenerative disc disease) (*id.* at 85). Dr. McFee opined that Plaintiff's medically determined impairments could reasonably be expected to produce the pain and other symptoms Plaintiff stated he was experiencing, but not to the degree alleged (*id.* at 86). In discounting Plaintiff's claims about the intensity, persistence and functionally limiting effect of his symptoms, Dr. McFee relied primarily on the medication history, and took into account the finding of Margarita Hernandez, Ph.D., that Plaintiff appeared to be exaggerating his limitations during an in-person consultative mental health examination (*id.* at 71-72, 86). Dr. McFee concluded that Plaintiff could occasionally lift and carry up to 20 pounds and could frequently lift and carry up to ten pounds, could stand and sit for up to six hours in an eight-hour work day, and could push and pull, including the operation of hand or foot

11

controls, without limitation other than the limitation on lifting (*id.* at 86-87). She further opined that Plaintiff could climb ramps and stairs, balance, kneel, crouch, and crawl without limitation, and could frequently climb ladders or stairs and stoop (*id.* at 87). On reconsideration, on June 13, 2013, S. Ram Upadhyay, M.D., affirmed Dr. McFee's assessment, except that he found that Plaintiff could only occasionally climb ramps, stairs, ladders, or scaffolds, stoop, and crawl, and was unlimited in his ability to balance, kneel, and crouch (*id.* at 99).

### 3. Plaintiff's Statements

In Plaintiff's May 6, 2012 function report, which was filled out for him by one Jorge Montalban (*id.* at 252), Plaintiff focused primarily on his claimed mental health impairments as a basis for claiming disability (*id.* at 245-252). In terms of physical impairments and related limitations, Plaintiff indicated that he had no problem with personal care activities (*id.* at 246), and that his conditions, which included back pain, affected his ability to lift, squat, bend, and sit (*id.* at 250). He stated that he could walk for thirty minutes before needing to rest for fifteen minutes (*id.* at 250).

During the first hearing, on January 22, 2013,[5] Plaintiff testified that "they" were telling him they wanted to operate on his back, that something was "pinching," that his "spinal column [wa]s deviated," and that his "whole back was absolutely spread with arthritis" (*id.* at 44). He said that because of his back condition, he could not do "strength" work. Sometimes he lost strength in his legs, and he felt a pinching, pulsating pain that prevented him from sitting in the chair. He attributed his back problem to being dropped when he was an infant. He stated that his back kind of "just exploded" on him after he was, first, attacked, and second, in a car

---

[5] Although the record reflects that Plaintiff testified through an interpreter, the ALJ noted that he answered questions accurately without waiting for their translation and concluded that he had the ability to communicate in English (A.R. at 35, 601).

accident, and after those events, back pain prevented him from working (*id.* at 50-51).  He said

his pain level on an average day was at eight or nine, and that with the medication, it went down

to six.  The pain, he said, was in his back, waist, and hips, and radiated down his legs (*id.* at 52).

At the second hearing, held on October 16, 2015 following remand, the ALJ focused

primarily on trying to ascertain what medications Plaintiff was taking, and what side effects, if

any, those medications caused.  Immediately before Plaintiff was sworn in, the following

exchange took place:

> ALJ:  Okay.  Let me swear you in and the vocational expert so you can testify
> under oath.  Please raise –
> CLMT:  I can't lift this arm.
> ALJ:  Okay, you can – he can raise his left hand.
> INTR:  I can lift this one up until right there, because I have several cuts on my
> shoulders and they are going to do surgery.  And he is indicating his right arm.
> He wants me to put my hand on his right arm, shoulder.

(*Id.* at 620).  Asked about his daily activities, Plaintiff testified that he lived alone in a small

apartment and cooked for himself (*id.* at 629-630).  He used paper plates because washing up

hurt his arms.  He had help carrying his laundry to another floor in the building because he could

not carry a lot (*id.* at 630-31).  He had no friends and did not attend church.  He generally just

stayed in his apartment talking to his grandmother who died (*id.* at 631-32).

### 4.  Vocational Experts' Testimony

At the first hearing, the vocational expert ("V.E.") testified that Plaintiff's past relevant

work would be classified as janitor, DOT 381.687-018, which is defined as unskilled and

requiring a medium level of exertion, and home health aide, DOT 354.377-014, defined as semi-

skilled and requiring a medium level of exertion (*id.* at 57).  These findings were adopted for the

purpose of the second hearing (*id.* at 634).

At the second hearing, the ALJ posed the following hypothetical to a different V.E.:

Assuming an individual of Plaintiff's age, with a marginal educational background, who was able to lift and carry up to 20 pounds occasionally and up to 10 pounds frequently, could not reach overhead with the right extremity, who could stand and walk for 6 hours and sit for 6 to 8 hours in an 8-hour day, could occasionally stoop, crouch, crawl, kneel, and climb ramps and stairs, could not climb ladders, ropes, or scaffolds, had no limits on balancing, was able to understand, remember, and carry out simple, routine, and repetitive tasks without strict production or pace rates, could respond appropriately to occasional and superficial contact with the general public and co-workers, without team work or collaboration, and to supervisory directions and feedback for simple work related matters, could such an individual perform Plaintiff's past work or other jobs available in the national economy? (*id. at* 635-36).

The V.E. responded that such an individual would not be able to perform the jobs that Plaintiff had performed in the past, but would be able to work as an inspector, DOT code 559.687-074,[6] of which there were approximately 40,000 jobs nationally and 800 in Massachusetts; assembler, DOT code 706.684-022,[7] of which there were approximately 30,000 positions nationally and 400 in Massachusetts; or sorter, DOT code 222.687-014,[8] of which there were approximately 30,000 positions nationally and 450 in Massachusetts. The ALJ observed that the DOT job descriptions for these positions did not address whether the jobs could be performed without reaching overhead with the right extremity, and asked whether these positions could be done by an individual with this limitation. Basing his opinion on his experience in

---

[6] Inspector and Hand Packager, DICOT 559.687-074, Dictionary of Occupational Titles (4th ed. 1991), available at 1991 WL 6833797 (1991).
[7] Assembler, Small Products, DICOT 706.684-022, Dictionary of Occupational Titles (4th ed. 1991), available at 1991 WL 679050 (1991).
[8] Garment Sorter, DICOT 222.687-014, Dictionary of Occupational Titles (4th ed. 1991), available at 1991 WL 672131 (1991).

contacting employers to discuss the upper extremity requirements in these jobs and placing individuals in such positions, the V.E. responded that the three positions he had identified did not require overhead reaching (*id*. at 636-37).

The V.E. then testified that if the hypothetical was further restricted to permit the individual in question to change between a sitting and a standing position as often as twice per hour, the three jobs that the V.E. had identified would still be available, but he would reduce the number of potential positions by fifty percent (*id.* at 637).  If an individual were off task four hours a day or absent from work twice a month because of his or her impairments, there would be no positions available (*id.* at 638).

Plaintiff's counsel asked whether an individual employed in the jobs the V.E. had identified would be required to work in close proximity to other employees.  The V.E. testified that an individual working in the positions he had identified would be required to work in proximity to, but not in collaboration with, other employees (*id.* at 639).  Plaintiff's counsel asked no further questions (*id.* at 639-40).

### B.  The ALJ's Decision

The ALJ followed the five-step sequential evaluation process.  At step one, the ALJ determined that Plaintiff had not performed substantial gainful activity since January 1, 2012, the alleged onset date (*id.* at 588).  At step two, the ALJ found that Plaintiff had the following severe impairments:  L5-S1 spondylolisthesis with bilateral L5 spondylosis, mild degenerative change of the lumbar spine, left glenohumeral joint arthrosis (shoulder), depressive disorder not otherwise specified, schizoaffective disorder, anxiety disorder not otherwise specified, posttraumatic stress disorder, personality disorder, and polysubstance abuse (in remission for five years).  At step three, she concluded that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of a listed impairment.

She specifically considered Listing 1.04, and concluded that Plaintiff's severe lumbar back

impairment did not meet this listing because Plaintiff's medical records showed that Plaintiff

consistently exhibited full strength and normal reflexes (*id.* at 588).

Before proceeding to step 4, the ALJ found that Plaintiff had the RFC:

> to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b). The claimant can perform occasional stooping, crouching, kneeling, and climbing ramps/stairs. The claimant has no limits to balancing. He cannot climb ladders, ropes, or scaffolds. He cannot perform overhead reaching with the right upper extremity. The claimant may need to alter sitting and standing up to two times per hour while continuing to work. The claimant can understand, remember and carry out simple, routine and repetitive tasks throughout an ordinary workday and workweek with normal breaks on a sustained basis without strict production rate or strict production pace requirements. He can respond appropriately to occasional and superficial contact with the general public and coworkers without teamwork or collaboration. He can respond appropriately to supervisory directions and supervisory feedback for simple work related matters in the routine work setting.

(*Id.* at 590).

At step four, the ALJ found that Plaintiff could not perform his past relevant work,

because his physical limitations precluded work as a janitor or a home health aide (*id.* at 600).

At step five, relying on the vocational expert's testimony, the ALJ concluded that, taking into

consideration the Plaintiff's age (forty years old at the time of alleged onset), education (limited),

work experience, and RFC, there were jobs that existed in significant numbers in the national

economy that Plaintiff could perform (*id.* at 600-01). Accordingly, the ALJ concluded that

Plaintiff had not been under a disability from January 1, 2012 through March 2, 2016, the date of

the decision now under review (*id.* at 602).

C.  Plaintiff's Contentions

1. <u>Plaintiff's Physical Impairments Did Not Meet Listing 1.04</u>

At step three, an ALJ must determine if the claimant's impairment or combination of impairments meets or equals a listed impairment. *See* 20 C.F.R. § 1520(d). "To meet a listed impairment, the claimant must show that h[is] impairment or combination satisfies all of the criteria required in the listing." *King v. Colvin*, Case No. 16-cv-146-JD, 2016 WL 4442787, at *3 (D.N.H. Aug. 23, 2016) (citing 20 C.F.R. § 404.1525(c)(3)). "'An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *MacNeil v. Astrue,* 908 F. Supp. 2d 259, 264 (D. Mass. 2012) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)).

Insofar as relevant to this case, Listing 1.04, entitled *Disorders of the spine*, requires a diagnosis of degenerative disc disease, resulting in compromise of a nerve root with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight leg-raising test (sitting and supine).

20 C.F.R. Part 404, Subpart P, App. 1, § 1.04 A.

The ALJ considered whether Plaintiff met the criteria of Listing 1.04 and concluded he did not because he consistently exhibited full strength and normal reflexes (A.R. at 588). Plaintiff contends that he met Listing 1.04 based on the September 30, 2013 preliminary report from neurosurgeon Thomas Kaye (Dkt. No. 23 at 5). Dr. Kaye's report substantiates a markedly restricted range of motion in Plaintiff's back and a positive straight leg raising sign on the right side. The report, however, does *not* substantiate any motor loss or sensory or reflex loss. Dr. Kaye noted that there was no atrophy and that strength appeared to be intact. He noted as well that sensation appeared intact and he did not note any loss of reflexes (A.R. at 480). There are numerous other notations in Plaintiff's medical records recording intact muscle strength and

negative straight leg raise tests bilaterally (e.g., *id.* at 395, 533, 809, 825, 836, 894). "Thus, the ALJ's decision that [Plaintiff's] physical impairment does not satisfy the criteria of Listing 1.04 is reasonably supported by objective evidence." *MacNeil*, 908 F. Supp. 2d at 265.

### 2. The ALJ Did Not Ignore Objective Evidence Supporting Plaintiff's Claims of Chronic Pain and Substantial Evidence Supported Her Decision.

Plaintiff's claim that the ALJ failed to consider objective documentation supporting Plaintiff's claim of disabling chronic pain is belied by the ALJ's decision, which included a detailed longitudinal history of the information in Plaintiff's medical records, including his complaints about back and shoulder pain and manifestations of that pain on examination, diagnostic imaging of his back and shoulders, and treatments for his complaints of back and shoulder pain, including physical therapy and medication (A.R. at 593-97).

"Once it is found that a claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms, the ALJ must evaluate evidence of the intensity and persistence of the symptoms, including statements from the claimant." *Bourinot v. Colvin*, 95 F. Supp. 3d 161, 180 (D. Mass. 2015) (citing 20 C.F.R. § 404.1529(c)(1); § 416.929(c)(1)). In conducting this evaluation, an ALJ must consider the entire record, and make findings about the claimant's credibility. *See id.*

> "If after evaluating the objective findings, the ALJ determines that the claimant's reports of pain are significantly greater than what could be reasonably anticipated from the objective evidence, the ALJ may consider other relevant information. *See Avery [v. Sec'y of Health & Human Servs.*, 797 F.2d [19,] . . . 23 [(1st Cir. 1986]]. Considerations capable of substantiating subjective complaints of pain include evidence of: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness and side effects of any medication taken to alleviate the pain or other symptoms; and (5) any other factors relating to

> claimant's functional limitations and restrictions due to pain. *See id.* at 22; 20
> C.F.R. §§ 404.1529, 416.929(c)(3)(i-vii).

*Costa v. Astrue*, 265 F. Supp. 2d 265, 272 (D. Mass. 2008); *see also Duffy v. Colvin*, Civil

Action No. 16-10719-PBS, 2017 WL 3388164, at *6-7 (D. Mass. Aug. 7, 2017). "While the

ALJ is required to consider all of the *Avery* factors, 'an ALJ is not required to discuss every

*Avery* factor in [her] decision.'" *Botelho v. Colvin*, 153 F. Supp. 3d 451, 463 (D. Mass. 2015)

(quoting *Silvia v. Colvin*, No. 13-11681, 2014 WL 4772210, at *6 (D. Mass. Sept. 22, 2014)).

Here, the ALJ accepted that the Plaintiff's medically determined physical impairments,

including his back and shoulder impairments, could be expected to cause the pain he claimed to

experience (A.R. at 592). She did not fully credit Plaintiff's statements about the intensity,

persistence, and limiting effects of his back and shoulder pain for multiple reasons, including that

the longitudinal medical record did not support disabling physical limitations and because

testimony about the effect of his medications was inconsistent with his medical records, where

his care providers regularly noted that he was taking medications without side effects. She

further noted Plaintiff's ability to bend and lift at the hearing notwithstanding his claims of

intractable back pain, and that his credibility overall was undermined by a determination that he

had not made a valid effort during a portion of a consultative mental health examination (*id.* at

592-93).

An ALJ's assessment of a claimant's credibility is entitled to substantial deference,

particularly when, as in this case, that assessment is supported by specific findings. *See*

*Bourinot*, 95 F. Supp. 3d at 180. There is substantial evidence supporting the ALJ's finding that

the longitudinal record did not support disabling physical limitations (A.R. at 593). Plaintiff

alleged a January 1, 2012 onset of disability. At his first hearing, he testified that his back pain

"exploded" after he was assaulted and was subsequently injured in a car accident (*id.* at 51).

While these events may have been traumatic, Plaintiff's medical records did not support his claim about their effects on his back. Medical records following the assault showed the injuries of note were to his head. An x-ray of Plaintiff's spine following the May 2012 assault showed no more than "mild degeneration" throughout his cervical spine (*id*. at 291, 299). Following the January 2013 car accident, Dr. Bajwa noted moderate limitation in the range of motion in Plaintiff's lumbar spine. In March 2013, at the conclusion of physical therapy for the effects of the car accident, Plaintiff had returned to baseline, with intermittent pain in his neck, back, and shoulders, ranging from 3 to 5 on a ten point scale (*id.* at 544).

The most significant objective medical evidence supporting Plaintiff's claims of disabling back pain was Plaintiff's May 2013 MRI, which showed spondylolisthesis and spondylosis at L5-S-1 with possible nerve root impingement (*id.* at 440-43). Nonetheless. in September 2013, when Plaintiff was evaluated by neurosurgeon Thomas Kaye, the plan was for conservative management, including physical therapy, pain medication, and possible epidural injections (*id.* at 480-81). *See Arruda v. Barnhart*, 314 F. Supp. 2d 52, 72 (D. Mass. 2004) (ALJ properly took into account the fact that claimant's treatment had been conservative). Notably, by May 2015, an MRI of Plaintiff's lumbar spine did not show spondylolisthesis or spondylosis, nerve root compression, or stenosis (A.R. at 959).

In weighing the evidence concerning Plaintiff's claim that back pain substantially limited his ability to lift and carry, the ALJ was entitled to rely on her observation at the hearing that Plaintiff easily picked up his backpack from the floor with one arm and moved it around. *See Perez v. Sec. of Health & Human Servs.*, 958 F.2d 445, 447-48 (1st Cir. 1991) (ALJ's observations of claimant's demeanor at hearing constituted substantial evidence for purposes of meeting the requirements of *Avery*). Nor did the ALJ err in relying on the observation of

consultative examiner Margarita Hernandez, Ph.D. who opined that Plaintiff appeared to be exaggerating his symptoms (A.R. at 597-98). *See Thompson v. Astrue*, Civil Action No. 10-11742-JLT, 2012 WL 787367, at *7-8 (D. Mass. Feb. 17, 2012) (Report and Recommendation) (in evaluating claimant's credibility, the ALJ was entitled to rely on consultative examiner's observations as a basis for concluding that the claimant's credibility was flawed); *see also Escobar v. Colvin*, Case No. 14cv02741-LAB(BGS), 2016 WL 354416, at *13 (S.D. Cal. Jan. 4, 2016) (ALJ was entitled to discount claimant's credibility based on claimant's exaggeration of symptoms).

There was a lack of opinion evidence in the record supporting Plaintiff's claims of functional limitations based on back or shoulder pain. Dr. Hernandez-Bem's May 24, 2012 EAEDC Medical Report was cursory at best and, as the ALJ observed, failed to support the doctor's opinion of disability by identifying any functional limitations attributable to Plaintiff's physical impairments (A.R. at 594). Dr. Hernandez-Bem's opinion of disability was not controlling because, as the ALJ noted, a finding of disability is reserved for the Commissioner (*id.* at 594). *See* SSR 96-5p, 1996 WL 374183, at *6 (July 2, 1996). Further, the EAEDC Medical Report was "a brief list of checked answers to form questions unaccompanied by explanation," *Arruda*, 314 F. Supp. 2d at 72, and therefore lacked persuasive force. *See* 20 C.F.R. §§ 404.1527(d)(3); 416.927(d)(3) ("[t]he better an explanation a source provides for an opinion, the more weight we will give to that opinion").

In crafting Plaintiff's RFC, the ALJ gave "some weight" to the opinions of the state agency medical consultants (A.R. 596-97). "'The amount of weight that can properly be given the conclusions of non-testifying, non-examining physicians will vary with the circumstances, including the nature of the illness and the information provided the expert.'" *Bourinot*, 95 F.

Supp. 3d at 179 (quoting *Rose v. Shalala*, 34 F.3d 13, 18 (1st Cir. 1994)). "SSA regulations specifically provide that in appropriate circumstances, 'opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." *Id.* at 179-80 (quoting SSR-96-9p, 1996 WL 374180, at *3 (July 2, 1996)). Plaintiff has not argued that the ALJ erred by relying on the opinions of Drs. McFee and Upadhyay. Although these evaluations were made relatively early in the process, degenerative disc disease is a common condition, and, as the ALJ noted, following these evaluations, from 2013 through the date of the ALJ's decision, the treatment for Plaintiff's back pain remained conservative (A.R. at 596-97). In these circumstances, there was no error. *See e.g., Duffy v. Colvin*, Civil Action No. 16-10719-PBS, 2017 WL 3388164, at *5 (D. Mass. Aug. 7, 2017) (in view of the lack of any treating physician medical opinions that translated claimant's impairment into functional limitations, ALJ properly relied on the opinions of non-examining, non-treating sources as evidence of functional limitations); *Bourinot*, 95 F. Supp. 3d at 179-80; *Arruda*, 314 F. Supp. 2d at 72.

As to Plaintiff's shoulder pain, the records reflect that Plaintiff's complaints about shoulder pain were intermittent and that he sometimes reported more acute pain in his left and sometimes in his right shoulder. An x-ray of both of Plaintiff's shoulders in October 2014 showed right a.c. joint arthrosis[9] with no acute abnormality, and mild arthrosis of the left a.c. joint (A.R. at 858-59). In terms of functional limitations attributable to shoulder pain, the best evidence in the record was Plaintiff's statement at the second hearing. He told the ALJ that "they" were going to do surgery on his right shoulder and he demonstrated the limit on his ability

---

[9] Arthrosis is "a degenerative disease of a joint." Merriam Webster's Medical Dictionary 51 (2006).

to lift his right arm for the ALJ. The ALJ apparently credited this statement because, based on it, she incorporated a limitation on overhead lifting with the upper right extremity when she assessed Plaintiff's RFC and when she posed hypothetical questions to the V.E. (*id.* at 597).

The ALJ's analysis of Plaintiff's functional limitations attributable to his physical impairments was supported by substantial evidence in the record and does not warrant remand.

### 3. The Commissioner Met Her Burden At Step Five.

The ALJ included as a restriction that Plaintiff could not reach overhead with his right extremity, and, in a variation on her initial hypothetical question, asked whether an individual who needed to alter sitting and standing once an hour could perform the identified positions. The V.E. testified, based on his expertise and experience, which he described, that these restrictions would not preclude performing the positions he had identified. Plaintiff claims that the ALJ's reliance on this testimony was error requiring a remand because the ALJ was not qualified by experience to address variations in the job requirements set forth in the Dictionary of Occupational Titles. Plaintiff's contention is unavailing for two reasons.

First, as the government notes, Plaintiff's attorney did not object to the V.E.'s testimony at the hearing on the grounds now raised. This omission "undermines Plaintiff's allegations that some substantial error occurred." *Pires v. Astrue*, 553 F. Supp. 2d 15, 26 (D. Mass. 2008) (citing *Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000); *Edwards v. Sec'y of Health & Human Servs.*, No. 94-1345, 1994 WL 481140, at *3-4 (1st Cir. Sept. 2, 1994) (unpublished); *Torres v. Sec'y of Health & Human Servs.*, 870 F.2d 742, 746 (1st Cir. 1989)). "[C]laimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in

the administrative hearing." *Carey*, 230 F.3d at 146-47. Other sessions of this court have held

that the failure to raise a conflict or an implied conflict between the vocational expert's

testimony and the DOT serves as a waiver of any such claim. *See, e.g., Marques v. Astrue*, Civil

Action No. 10-11813-GAO, 2012 WL 925710, at *10 (D. Mass. Mar. 6, 2010) ("[B]ecause [the

claimant] was given an opportunity to cross-examine the vocational expert and neglected to raise

the objection, [the claimant] is barred from raising it at trial."); *Aho v. Comm'r of Soc. Sec.*

*Admin.*, Civil Action No. 10-40052-FDS, 2011 WL 3511518, at *14 (D. Mass. Aug. 10, 2011).

   If the contention is considered substantively, it fails as a matter of law. The positions

identified by the V.E. in response to the ALJ's hypothetical all required "reaching frequently."

*See* DICOT 599.687-074, 1991 WL 683797 (1991); DICOT 706.684-022, 1991 WL 679050

(1991); DICOT 222.687-014, 1991 WL 672131 (1991). The DOT descriptions of these positions

are silent with respect to any requirement for overhead reaching. The ALJ found that, given

Plaintiff's recent claims about right shoulder pain, he was precluded from overhead reaching

with his upper right extremity (A.R. at 597). "Adjudicators are obliged to identify and resolve

discrepancies between vocational evidence and the DOT before relying on a vocational expert's

evidence to support a step 5 finding." *Barker v. Astrue*, Civil No. 09-437-P-S, 2010 WL

2680532, at *2 (D. Me. June 29, 2010) (citing SSR 00-4p, 2000 WL 1898704, at *2 (2000)).

   There is no actual conflict between the DOT job descriptions and the vocational expert's

testimony that Plaintiff could perform these jobs. Plaintiff apparently contends that there is an

implied inconsistency between the limitation in the RFC that Plaintiff could not reach overhead

with his upper right extremity, and the DOT requirement of frequent reaching in the three

positions identified by the V.E. The ALJ appreciated that the DOT position descriptions were

silent on the subject of overhead reaching, and addressed this possible latent inconsistency by

asking the V.E. whether reaching overhead was required. The V.E. assured the ALJ that it was not, and offered that opinion based on his experience, which included contacting employers and discussing upper extremity requirements, as well as placing individuals in such jobs (A.R. at 636-37). The ALJ's reliance on this evidence was in accord with SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000), the SSA ruling designed to clarify the standards for the use of vocational experts who testify at hearings. *See id.*, at *1.

In pertinent part, SSR 00-4p provides, as to resolving conflicts or apparent conflicts in occupational information, as follows:

> Reasonable explanations for such conflicts, which may provide a basis for relying on evidence from the VE . . . rather than the DOT information, include but are not limited to the following: Evidence from VEs . . . can include information not listed in the DOT. The DOT contains information about most, but not all, occupations. The DOT's occupational definitions are the result of comprehensive studies of how similar jobs are performed in different workplaces. The term "occupation," as used in the DOT, refers to the collective description of those jobs. Each occupation represents numerous jobs. Information about a particular job's requirements or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a VE's . . . experience in job placement or career counseling. . . . If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict.

SSR 00-4p, 2000 WL 1898704, at *2-3. "In accordance with that language, courts have held that a vocational expert's testimony that, in his or her experience, a job is performed differently than described in the DOT, constitutes a 'reasonable explanation.'" *Barker*, 2010 WL 2680532, at *4 (collecting cases). Here, the ALJ appropriately recognized that a possible latent conflict existed between the DOT job descriptions and the restriction in the RFC on overhead lifting with the upper right extremity, and posed questions to the V.E. on this point. The V.E. testified to appropriate experience on which to base his opinion that the jobs he had identified did not require overhead reaching. "The ALJ was justified in relying on [the resulting] expert testimony.

There was no error at step five of the evaluation process." *Szumylo v. Astrue*, 815 F. Supp. 2d 434, 441 (D. Mass. 2011).

4. Plaintiff has not satisfied the standard for remand to the Commissioner.

Pursuant to sentence six of 42 U.S.C. § 405(g), a district court may "at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." In this case, the so-called new evidence takes the form of a January 12, 2016 MRI of Plaintiff's right shoulder and a March 23, 2016 record of a medical appointment in follow-up to the MRI (Dkt. No. 20-1; Dkt. No. 20-2).

Under sentence six of § 405(g), remand "is appropriate only where the court determines that further evidence is necessary to develop the facts of the case fully, that such evidence is not cumulative, and that consideration of it is essential to a fair hearing." *Evangelista v. Sec. of Health & Human Servs.*, 826 F.2d 136, 139 (1st Cir. 1987) (citing *Scott v. Califano*, 462 F. Supp. 240, 242 (N.D. Ill. 1978)). "The mere existence of new evidence in addition to that submitted before the hearing examiner will not constitute sufficient cause for remand." *Id.* (citing *Teal v. Mathews*, 425 F. Supp. 474, 481 (D. Md. 1976)). "Plaintiff has the burden of proving that he is entitled to reversal or remand based on evidence that was not considered by the ALJ." *Rawls v. Apfel*, 998 F. Supp. 70, 75 (D. Mass. 1998). A claimant must prove, first, that there was good cause for the failure to present such evidence to the ALJ, and, second, that the evidence on the basis of which he or she seeks remand is material. *See id.*

"On a cautionary level, the First Circuit has observed that 'Congress plainly intended that remands for good cause should be few and far between, that a yo-yo effect be avoided – to the end that the process not bog down and unduly impede the timely resolution of social security

appeals.'" *Plato v. Colvin*, Civil No. 1:12-CV-319-DBH, 2013 WL 5348603, at *2 (D. Me. Sept. 24, 2013) (quoting *Evangelista*, 826 F.2d at 141). "'Typically, a request for a sentence six remand concerns 'new evidence . . . tendered after the ALJ decision.'" *Plato*, 2013 WL 5348603, at *1 (quoting *Mills v. Apfel*, 244 F.3d 1, 5 (1st Cir. 2001); *see also Benitez v. Astrue*, Civil Action No. 11-30021-KPN, 2011 WL 6778534, at *5 (D. Mass. Dec. 20, 2011). "In general, the administrative record closes once the ALJ issues her decision, regardless of whether that decision becomes the SSA's final decision." *Moore v. Astrue*, Civil Action No. 11-cv-1936-DJC, 2013 WL 812486, at *12 (D. Mass. Mar. 2, 2013) (citing 20 C.F.R. § 405.360). The report of the January 12, 2016 MRI is not "new" in the sense required to support remand: it was available before March 2, 2016, the date on which the ALJ issued her decision. That Plaintiff's attorney may not have been immediately made aware of the report does not constitute good cause for failing timely to submit it to the ALJ. Plaintiff bears the burden of producing evidence in support of his claim. *See Benitez*, 2011 WL 6778534, at *5. Therefore, Exhibit A, which predates the ALJ's decision, "do[es] not provide a basis for remand." *Benitez*, 2011 WL 6778534, at *5; *Conner v. Barnhart*, 443 F. Supp. 2d 131, 134 (D. Mass. 2006).

The medical report submitted as Exhibit B post-dates the close of evidence (albeit only by three weeks) and therefore arguably qualifies as "new." *But see Moore*, 2013 WL 812486, at *16 (to be considered "new," evidence must have been unavailable during administrative proceedings, which includes action at the Appeals Council level). Even when evidence is "new" for purposes of § 405(g), remand is warranted only when such evidence, had it been before the ALJ, might have changed the outcome of the ALJ's decision. *See, e.g., id.*; *see also Evangelista*,

826 F.2d at 140. Plaintiff has not shown that the March 23 medical report might have changed the ALJ's decision.

The diagnosis of a condition often says little about its severity or the functional limitations attributable to such a condition. *See White v. Astrue*, Civil Action No. 10-10021-PBS, 2001 WL 736805, at *6 (D. Mass. Feb. 23, 2011). A torn rotator cuff is not per se disabling. *See, e.g., Ross v. Colvin*, Civil Action No. 13-11089-PBS, 2014 WL 587849, at *8 (D. Mass. Feb. 14, 2014) (where plaintiff retained normal levels of strength, sensation, and reflexes, rotator cuff issues of long duration were not disabling); *Troncoso v. Astrue*, Civil Action No. 11-10726-RGS, 2012 WL 441753, at *7 (D. Mass. Feb. 9, 2012) (allegedly disabling condition was pain following bilateral rotator-cuff surgeries; denial of benefits affirmed); *Matos v. Astrue*, 795 F. Supp. 2d 157, 165 (D. Mass. 2011) (rotator cuff problem was not disabling where there was no evidence of muscle atrophy and medication alleviated pain).

The medical report submitted by Plaintiff as Exhibit B substantiated limits in Plaintiff's range of motion in his upper right extremity caused by his torn rotator cuff (Dkt. No. 20-2 at 3). The ALJ, however, already had before her evidence of the functional limitation attributable to this impairment because Plaintiff demonstrated at the second hearing how high he could lift his right arm (A.R. at 620). The ALJ credited Plaintiff's demonstration of his functional limitations attributable to his right shoulder impairment, and, accordingly, adjusted the RFC to eliminate the need for overhead reaching (*id.* at 635). In this sense, the report is cumulative of the information Plaintiff provided at the hearing. Other observations in the "Objective" section of the report would not have been likely to change the ALJ's decision. Plaintiff was described as appearing to be in no acute distress, and "unusually muscular and vascular in the upper body, notably symmetric on both sides considering his symptoms" (Dkt. No. 20-2 at 3). He was observed to

have normal strength, sensation, and reflexes in his upper extremities (*id.*). Nor would the record have established a disabling impairment lasting at least a year. Plaintiff's complaints about pain in either shoulder are intermittent in the records submitted to the ALJ. The most recent records documenting shoulder problems reflected that, although Plaintiff reported bilateral shoulder pain, that pain was more problematic in his left shoulder, which he dislocated in May 2014 (A.R. 854-556, 934, 943-44, 956). The tear in Plaintiff's right rotator cuff and the resulting functional limitation are not shown by the submitted records to have lasted for at least a year. Exhibit B addresses treatment options and does not address the likely duration of the limitation on Plaintiff's ability to lift his right arm.

Finally, Plaintiff appears to contend that Exhibit B might have changed the ALJ's decision because objective medical evidence of this impairment might have changed the ALJ's assessment of his credibility. The court disagrees. During his hearing testimony, Plaintiff appeared in significant respects to be a less than reliable historian. His testimony at the second hearing about side effects from his medications was inconsistent with his medical records. His testimony at the first hearing about the condition of his back was inconsistent with the medical records. Further, a consultative examiner concluded, based on contradictory results during the examination she conducted, that he was exaggerating his symptoms. These inconsistencies, on which the ALJ relied for her credibility assessment, would not have disappeared because the Plaintiff was diagnosed with a rotator cuff tear in 2016.

Because Plaintiff has failed to show a reasonable probability that Exhibit B – or Exhibits A and B together – would have changed the outcome of the ALJ's decision, there is no basis for

a second remand of this case.  *See Moore*, 2013 WL 812486, at *13-14; *see also Evangelista*, 826 F.2d at 141-42.

V.     Conclusion

For the reasons stated, Plaintiff's Motion Requesting Remand Based on New and Material Evidence (Dkt. No. 20) and Plaintiff's Motion for Order Reversing the Commissioner's Decision (Dkt. No. 22) are DENIED, and the Commissioner's Motion for Order Affirming Decision of Commissioner (Dkt. No. 27) IS GRANTED.  A judgment shall enter for the defendant, and the Clerk's Office is directed to close the case.

It is so ordered.

Dated: Sept. 25, 2017                                         /s/ Katherine A. Robertson
                                                             KATHERINE A. ROBERTSON
                                                             United States Magistrate Judge